J-S22045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LLOYD JOSEPH VALCARCEL | : | |
| | : | |
| Appellant | : | No. 166 MDA 2025 |

Appeal from the PCRA Order Entered January 2, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002266-2021

BEFORE: LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: SEPTEMBER 26, 2025**

Appellant, Lloyd Joseph Valcarcel, appeals from the January 2, 2025, order entered in the Court of Common Pleas of York County, which denied his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

The circumstances leading to Appellant's arrest and subsequent conviction in this matter are recounted in an affidavit of probable cause, admission of which into evidence the parties stipulated. N.T. Non-jury Trial 6/27/2022 at 2. Those circumstances are outlined by the arresting officer as follows:

> On 3/23/2021 at approximately 0239 hours, I was on active patrol in West Manchester Township in a marked patrol unit (46-3). I was traveling west on W Market St in the area of the Route 30 bypass interchange. I observed a black BMW bearing PA

_____

* Former Justice specially assigned to the Superior Court.

Registration LNW1419 directly in front of me. I ran the registration through Penndot [*sic*] which showed the registered owner to a [*sic*] have PHOTO ID and not a valid driver's license. The vehicle also had a dark tint on all four side windows which prevented me from seeing inside of the vehicle. Once I got closer to the vehicle to conduct a traffic stop, the vehicle had put its hazard lights on and moved to the right shoulder of the roadway just prior to Baker Rd. The vehicle never stopped moving and came back out onto the roadway in front of my vehicle. I initiated my emergency lights and conducted a traffic stop in the parking lot of Sheetz on W Market St.

I approached the driver's side of the vehicle and asked the driver, later identified as Willie Valcarcel, for his driver's license. Willie handed me a NY driver's license and explained to me he was operating his uncle's vehicle and did not have the registration and insurance readily available. I returned to my patrol vehicle and ran Willie's license on CAD. The license returned and showed it to be suspended. I returned back to the driver's side of the BMW and advised Willie of his license status. He advised his back seat passenger, Christopher Chase (who was later determined to be Lloyd Valcarcel), had a valid driver's license. I asked Willie to roll the driver's side rear window down so I could speak to Christopher (Lloyd)[.] When the back window rolled down, I immediately detected an odor of raw marijuana coming from the back passenger compartment of the vehicle. Christopher (Lloyd) provided me his name and date of birth[.] I returned to my patrol vehicle and requested Officer Gracey and Officer Engle respond to my location.

Once I had back up officers on scene I re [*sic*] approached the vehicle to speak to Willie. I advised Willie that I could smell an odor of marijuana coming from inside of the vehicle. I asked Willie for consent to search his vehicle which he denied. I then advised Willie that I would be towing his vehicle and applying for a search warrant per state law. Willie, his front passenger Clifton Brickhouse, and Christopher (Lloyd) all became nervous. I first asked Willie to step out of the vehicle and asked him to stand in front of his car. Officer Gracey then opened the rear passenger side door where Christopher (Lloyd) was sitting. When Christopher (Lloyd) started to get up to get out of the car, Officer Engle saw the rear of a handgun that was in his front waistband. Christopher (Lloyd) was immediately faced towards the car and placed in handcuffs. A black Glock 9mm (serial number: BDUB894) was recovered from Christopher's (Lloyd's) front waistband. YCC ran the firearm for stolen and ownership and gave negative results on

both. The gun had a cartridge in the chamber and 28 more cartridges in a 32-round magazine. Christopher (Lloyd) does not possess a permit to carry concealed weapons. During a search incident to arrest, I located 3 bags of "stoner patch dummies" containing marijuana, 1 clear plastic tied baggie of marijuana and 3 oxcodone [*sic*] pills in a clear plastic tied baggie which are schedule 2 controlled substances. 2 bags of the stoner patch dummies, and the oxycodone pills were recovered from his front jacket and 1 bag of the stoner patch dummies and the clear plastic tied bag of marijuana were located in his right front jean pocket. Christopher (Lloyd) does not possess a medical marijuana card. I did check the handcuffs for fit on Christopher (Lloyd) and double locked them.

Christopher (Lloyd) was placed in the rear of my patrol vehicle. I asked him if the address on his driver's license was correct, and he told me to "suck his dick."

The handgun, marijuana, and oxycodone pills were all placed into evidence. Christopher (Lloyd) was then transported to central booking where he was handed over to Sheriff's deputies.

At 0635 hours, YCC advised that Central Booking was requesting a phone call from this officer. Deputy Kitzmiller advised that he found Christopher was actually Lloyd Joseph Valcarcel (DOB: */**/****). Lloyd's true identity was confirmed at central booking, and he will be charged with False ID.

Affidavit of Probable Cause dated March 29, 2021.

The trial court set forth the subsequent procedural history of this case in its December 16, 2022, Order and Opinion pursuant to Pa.R.A.P. 1925(a) as follows:

On March 29, 2021, a criminal complaint was filed charging Defendant with Firearms Not to Be Carried Without a License, a felony of the third degree; Possession of Marijuana Small Amount, a misdemeanor; Intentional Possession of a Controlled Substance by a Person Not Registered, a misdemeanor; False Identification to Law Enforcement Officer, a misdemeanor of the third degree Person Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms, a felony of the second degree.

On June 1, 2021, Heather A. Reiner, Esquire, entered her appearance on behalf of Defendant. On July 5, 2021, Defendant

filed an Omnibus Pre-Trial Motion alleging an unlawful search and seizure and requesting the suppression of all evidence that resulted from that search and seizure. Def.'s Mot. to Suppress, 07/05/2021. On July 16, 2021, a hearing was scheduled to address the Suppression Motion. On July 25, 2021, Attorney Reiner filed a Motion to Withdraw as Counsel.

On August 19, 2021, at the time scheduled for the hearing on the Motion to Suppress, Defendant indicated that Attorney Galloway would be taking over as defense counsel once he received Attorney Reiner's File. This Court permitted Attorney Reiner to withdraw as counsel with the directive that her obligation for representation would cease upon turnover of the file. Ct. Order 2:10-14, 08/19/2021. At that time, the Motion to Suppress was withdrawn without prejudice with the direction that "any future motion to suppress must be filed within 20 days of today's date with an entry of appearance by whoever is going to represent Mr. Valcarcel; otherwise, it will be considered untimely and not heard." *Id.* at 2:13-18.

On September 9, 2021, Roy L. Galloway I11, Esquire, entered his appearance on behalf of Defendant. On September 13, 2021, Defendant filed an Omnibus Pre-Trial Motion, again alleging an unlawful search and seizure and requesting all evidence seized as a result of a search of Defendant's person be suppressed Def.'s Mot. to Suppress. 09 /13/2021. A hearing on Defendant's Motion was scheduled for November 15, 2021.

On November 15, 2021, at the time scheduled for the Suppression hearing, Attorney Galloway represented to the Court that, as an officer of the court with a duty of candor, he could not state the pending motion was well-grounded and rooted within Pennsylvania law and jurisprudence and was not frivolous. Suppression Hr'g Tr. 2:15- 23, 11/15/2021. As a result, Attorney Galloway indicated that the Motion needed to be withdrawn. *Id.* at 2:24. Attorney Galloway went on to state "I think my client would disagree with me, but as an officer of the Court having watched the video and read over all of the reports and reviewed all the jurisprudence on this body of law or the area of the law that meets the facts of this case, I can't proceed with the motion." *Id.* at 2:24-3:4. The Defendant then addressed the Court indicating he did not wish to proceed to trial with Attorney Galloway representing him and that he was obtaining new counsel. *Id.* at 4:16-5:20. At the conclusion of the proceeding, this Court issued an order directing the Motion be withdrawn with prejudice "as this is the second time it has been filed and not proceeded with." *Id.* at 6:21-23. Defendant was granted a final

opportunity to proceed with new counsel, and the matter was set to be ready for trial. *Id.* at 7:1-5. Attorney Galloway was released from representation and directed to provide the file to new counsel. *Id.* at 7:15-17.

On February 24, 2022, Jeremy D. Williams, Esquire, entered his appearance on behalf of Defendant. On March 20, 2022, Defendant filed an Omnibus Pre-Trial Motion alleging an unlawful search and seizure and requesting all evidence seized because of a search of Defendant's person be suppressed. Def.'s Mot. to Suppress, 03/20/2022. On March 27, 2022, this Court issued an Order denying the third Omnibus Pre-Trial Motion citing the similar motion, filed by prior defense counsel, which was withdrawn with prejudice at the time scheduled for the hearing. On March 28, 2022, the Commonwealth filed an Answer to Defendant's third Omnibus Pre-Trial Motion requesting the Motion be dismissed as untimely and due to the previous Motion being withdrawn with prejudice. On April 12, 2022, Defendant filed a Motion to Reconsider Denial of Omnibus Motion without Hearing. On April 14, 2022, this Court issued an Order denying Defendant's Motion to Reconsider.

On May 4, 2022, Defendant filed a Motion to Schedule a Stipulated Bench Trial. On May 5, 2022, the Honorable Richard K. Renn issued an Order striking the case from the trial list and scheduling a stipulated bench trial for Jul[y] 26, 2022. On May 9, 2022, this Court rescheduled the bench trial for June 27, 2022. On June 27, 2022, the parties agreed to a stipulated bench trial and Commonwealth Exhibits 1 through 7 were admitted into the record.

Trial Court Opinion December 16, 2022.

Appellant was found guilty on all counts, and the matter proceeded to sentencing on August 22, 2022. Appellant was sentenced to an aggregate of three-and-a-half to seven years' incarceration, with a year of reentry supervision to follow. Appellant subsequently filed a notice of appeal, and on October 24, 2023, this Court affirmed the judgment of sentence, upholding the trial court's dismissal of Appellant's third omnibus pre-trial motion as

untimely filed. **Commonwealth v. Valcarcel**, 307 A.3d 635 (Pa. Super. 2023).

On July 5, 2024, Appellant filed a timely *pro se* PCRA petition. On December 6, 2024, the PCRA Court issued a Notice pursuant to Pa.R.Crim.P. 907 of its intent to deny post-conviction relief without a hearing. On December 9, 2024, the PCRA Court issued a subsequent Order denying post-conviction relief; no hearing was held on Appellant's petition.[1] The instant appeal follows.

Appellant raises four issues for this Court's consideration:

" i. Whether the PCRA court erred by issuing and failing to serve onto defendant its December 9, 2024, 907 notice of intent to dismiss — [*sic*] defendant's PCRA petition without a hearing?

ii. Whether the PCRA court erred by failing to grant an amendment of its December 31, 2024, final order containing allegation of December 9, 2024, issued notice of intent to dismiss — upon proof its issued notice was never served nor received?

i. [*sic*] Whether the PCRA counsel provided ineffective assistance of counsel by failing to acknowledge, raise or amend defendant's Petition for Post-Conviction Collateral Relief with meritorious claim and existing proof of Arresting Officer's material misrepresentations resulted [*sic*] unlawful prolonged traffic stop?

ii. [*sic*] Whether the PCRA counsel provided ineffective assistance of counsel in violation of defendant's Sixth Amendment right by failing to inquire, investigate or plead the factual basis that would have supported defenant's [*sic*] reasoning for filing Petition seeking Post-Conviction Collateral Relief upon illegal search and seizure claims?

_____

[1] Appellant contends that he did not receive the notice of intent to dismiss prior to his receipt of the Order denying post-conviction relief. Appellant's Brief at 9.

Appellant's Brief at 4 (suggested answers omitted).

We begin by noting the following:

On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

*Commonwealth v. Nero,* 58 A.3d 802, 805 (Pa. Super. 2012) (quotation marks and quotations omitted).

For the sake of clarity, we will address Appellant's issues raised in logical, as opposed to numerical, order. Appellant's third and fourth issues concern alleged ineffectiveness of PCRA counsel in declining to proceed with Appellant's claims of ineffective assistance of counsel relative to his various trial counsels' failure to bring his suppression motion before the trial court. Thus, Appellant presents a claim of "layered ineffectiveness," and therefore in order to succeed in his claim of PCRA counsel's ineffectiveness, he must plead, present, and prove trial counsel's ineffectiveness. *See Commonwealth v. McGill*, 832 A.2d 1014 (Pa. 2003). In order to establish ineffective assistance of counsel, Appellant must establish, *inter alia*, that the underlying claim has arguable merit. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). Here, Appellant's claims all relate to the trial court not having heard and ruled upon his serial motions to suppress. Thus, in order to prove any of his claims

of ineffective assistance of counsel, he must establish that the underlying suppression issue has arguable merit. He cannot.

In his various suppression motions, Appellant contends that his seizure and the subsequent search of his person and effects were unlawful where the police did not have reasonable suspicion to support extension of the traffic stop.[2] Omnibus Pretrial Motion 9/13/2021 at 6 (unpaginated); Omnibus Pretrial Motion 3/20/2022.

"Our Supreme Court has defined three forms of police-citizen interaction: a mere encounter, an investigative detention, and a custodial detention." *Commonwealth v. Beasley*, 761 A.2d 621 (Pa. Super. 2000). The level of suspicion required to permit detention is dependent on the manner of violation at issue. *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013). If the violation is such that an investigation is required to establish proof thereof, an officer may undertake an investigatory detention only if the totality of the circumstances give rise to reasonable suspicion. *Id.* Further, an officer extending a traffic stop in order to investigate a subsequent

---

[2] As it pertains to the initial stop of the vehicle, we note that the officer indicated he stopped the vehicle because of dark tinted windows, which prevented him from seeing inside of the vehicle. Such a stop is valid. *See* 75 Pa.C.S.A. § 4524(e)(1) (pertaining to sun screening and other materials prohibited); *Commonwealth v. Prizzia*, 260 A.3d 263, 268-69 (Pa. Super. 2021) ("[T]o possess probable cause that a vehicle is in violation of Section 4524(e)(1), an officer must only observe that the tint on the vehicle's windows is so dark that it prohibits the officer from seeing inside the car.") (citation omitted).

violation, unrelated to the reason for the traffic stop, requires reasonable suspicion to do so. *See Commonwealth v. Mattis*, 252 A.3d 651, 656 (Pa. Super. 2021).

"[I]n determining whether an officer has reasonable suspicion to conduct an investigative detention, we examine the totality of the circumstances at issue," and furthermore, "we emphasize that [finding] reasonable suspicion is not an exact science that requires *absolute certainty* that an individual was or was about to be involved in criminal activity." *Commonwealth v. Jackson*, 302 A.3d 737, 750 (Pa. Super. 2023) (emphasis in original). Additionally, "reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further." *Commonwealth v. Rogers*, 849 A.2d 1185, 1190 (Pa. 2001). While Appellant's contention that the mere possession of an item subject to a licensing scheme, *i.e.* marijuana or a firearm, would be insufficient to establish reasonable suspicion if taken in isolation is arguably correct, it is not the case that the presence of such an item cannot be taken into account at all when assessing the totality of the circumstances. *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021)("[W]e hold that the smell of marijuana **may be a factor**, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle.") (emphasis added); *see also Commonwealth v. Hicks*, 208 A.3d 916, 945 (Pa. 2019).

However, the matter *sub judice* is readily distinguishable from **Barr**, where our Supreme Court held the police lacked probable cause to search the vehicle during a traffic stop since the smell of marijuana emanating from the vehicle, without any other factors, was insufficient alone to establish probable cause. Specifically, in the case *sub judice*, Appellant was traveling in a vehicle with darkly-tinted windows through which the officer could not see; the driver of the vehicle did not have a valid driver's license; the driver could not produce the vehicle's registration or proof of insurance; the driver was not the registered owner of the vehicle; it was represented to the officer that Appellant, the backseat passenger, was named "Christopher Chase" and that he had a valid driver's license, but the officer was unable to confirm the existence of a valid driver's license under that name[3]; the officer detected the smell of marijuana emanating from within the vehicle; and when the officer asked for consent to search the vehicle, both the driver and Appellant became visibly nervous. We hold that these facts indeed gave rise to reasonable suspicion that criminal activity was afoot. Thus, Appellant's underlying motion to suppress was entirely without merit, and as a result, he cannot prove that his trial attorneys were ineffective for failing to successfully present the suppression matter to the trial court. Likewise, Appellant cannot demonstrate that PCRA counsel was ineffective for failing to proceed with the instant

---

[3] Omnibus Pre-trial Motion to Suppress, 7/21/2021.

petition predicated on trial counsels' handling of the suppression issue. Thus, Appellant's third and fourth issues merit no relief.

Appellant's first and second issues address alleged defects in service of the Court's Pa.R.Crim.P. 907 notice of intent to dismiss his PCRA petition without a hearing. However, even assuming, *arguendo*, that Appellant's claim that he was not timely served with the notice are true, such does not automatically entitle him to reversal. **Commonwealth v. Pridgen**, 395 A.3d 97 (Pa. Super. 2023). Rather, Appellant must establish that he was prejudiced by the defective procedure. **Id.** Here, he has failed to do so.

With regard to Appellant's first issue, he contends that, immediately upon receipt of the 907 notice, he requested allowance to address "PCRA counsel's no-merit allegations." Appellant's Brief at 12. While the PCRA Court did not grant his request, Appellant presented his challenge to PCRA counsel's no-merit allegations in the instant appeal, and as such, he has not demonstrated that he was prejudiced by the PCRA Court's action or inaction in this matter as his challenge was not waived or otherwise precluded thereby. **See Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2020) ("[A] PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even on appeal."). Appellant does not identify or allude to any other manner in which this alleged deficiency prejudiced him. As such, his first issue merits no relief.

Regarding Appellant's second issue, he contends generally that the PCRA Court's denial of his request that the Court amend its order dismissing his petition "denied appellant [*sic*] the opportunity to correct, challenge or contest," the order. As Appellant timely filed an appeal from the order to this Court, he was not denied his opportunity by the PCRA Court's actions or inactions. As such, his second issue merits no relief.

Wherefore, for the foregoing reasons, Appellant has failed to establish that he is entitled to relief, and, therefore, we affirm the Order of the PCRA Court denying his PCRA petition.

Order Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/26/2025